339 F.2d 475
 James P. McNAMARA, Plaintiff,
v.
WEICHSEL DAMPFSCHIFFFAHRTS AG KIEL, GERMANY, Defendant and
Third-Party Plaintiff-Appellee, and Montship Lines Ltd.,
Defendant, v. PITTSTON STEVEDORING CORP., Third-Party
Defendant and Fourth-Party Plaintiff-Appellant, v. MONTSHIP
LINES LTD., Fourth-Party Defendant-Appellee.
 No. 55, Docket 28934.
 United States Court of Appeals Second Circuit.
 Argued Oct. 7, 1964.
Decided Dec. 21, 1964.
 
 Fenton F. Harrison, Buffalo, N.Y. (Coffey, Heffernan & Harrison, Buffalo, N.Y., on the brief), for Weichsel, appellee.
 J. Edmund DeCastro, Jr., Buffalo N.Y. (Jaeckle, Fleischmann, Kelly, Swart & Augspurger, Buffalo, N.Y., on the brief), for Pittston Stevedoring, appellant.
 Warren A. Jackman, Chicago, Ill. (Bradley, Pipin, Vetter, Eaton & Jackman, Chicago, Ill., on the brief), for Montship Lines, appellee.
 Before LUMBARD, Chief Judge, and HAYS and ANDERSON, Circuit Judges.
 LUMBARD, Chief Judge.
 
 
 1
 For the second time, Pittston Stevedoring Corp., the third-party defendant in this case, appeals to us to reverse a judgment against it in favor of Weichsel Dampfschifffahrts AG Kiel, Germany, the defendant and third-party plaintiff. The initial action was brought in the Western District of New York by a longshoreman, James P. McNamara, against Weichsel, owner of the M/V Suderholm, which McNamara was unloading at the time of his injury on July 9, 1958. Weichsel sought indemnity from the stevedore, Pittston Stevedoring Corp., and Weichsel and McNamara brought claims against Montship Lines, Ltd., charterer of the Suderholm. At the first trial the jury found in favor of McNamara against Weichsel, and in favor of Weichsel against Pittston. The claims against Montship were dismissed. On appeal, this judgment was affirmed in all respects except that the claim in indemnity against Pittston by Weichsel was remanded for a new trial because of erroneous instructions to the jury. McNamara v. Weichsel Dampschifffahrts AG Kiel, Germany, 293 F.2d 900 (2d Cir. 1961).
 
 
 2
 At the second trial, which is the subject of this appeal, Weichsel continued to assert its claim against Pittston, and Pittston pressed a fourth-party complaint against Montship which it filed after we decided the first appeal. The second jury also found in favor of Weichsel against Pittston. Pittston's claim against Montship, which was heard by Judge Burke without a jury, was dismissed. We affirm.
 
 
 3
 At the time of the accident, the Suderholm's winches were operated by two crewmen of the ship, Lemke and Haefke. They had volunteered for this service when it was discovered that Pittston had no one in its employ qualified to operate the equipment. As the vessel's union agreement forbade the seamen to work past 5:00 P.M. on that day, Pittston was to pay Lemke and Haefke for working on their own time.
 
 
 4
 Lemke and Haefke spoke no English. Pittston's regular signalman, Czop, who spoke no German, conducted the unloading by means of hand signals. As the first load of steel was poised over the flat bed truck on which McNamara was standing, waiting to detach the rigging, Gregor, the Suderholm's chief officer, took over the signaling. He gave a signal to Lemke, the shoreside winchman, who took the load up in such a way as to cause it to move sideways and strike McNamara, throwing him to the ground and causing the injury for which he sued.
 
 
 5
 Pittston contends first that the district court erred in failing to submit to the jury the issue of whether Lemke was in the employ of Pittston at the time of the accident. Nowhere in the record does it appear that counsel for Pittston requested such a charge. The issue was raised by Weichsel when its counsel stated, 'I ask the Court to charge that the winchmen Haefke and Lemke were employees of Pittston as a matter of law at the time of the accident.' The response of the trial judge in denying the request indicates that he understood it to refer to whether the winchmen were taking orders from Gregor or Czop at the time the accident occurred.[1] Counsel for Pittston remained silent.
 
 
 6
 In answer to a question from the jury during their deliberations, the court instructed them that 'under the arrangement between Pittston and the captain of the ship, Lemke was to run the winch as an employee of Pittston.' This clearly implied that the employment was established as a matter of law. To this instruction, Pittston's counsel took no objection.
 
 
 7
 There was substantial uncontroverted evidence indicating that Lemke was 'borrowed' by Pittston for the purpose of operating the winches. Pittston specifically requested that the Captain of the Suderholm make arrangements so that two members of the crew could be hired and paid by Pittston. Pittston's contract with Montship provided that wages for two winchmen was one of the expenses to be borne by Pittston. Although Lemke did not appear on Pittston's payroll records, the evidence indicates that he quit or was fired from the job shortly after the accident and that the seaman who took his place turned part of his wages over to Lemke. Haefke, who remained on the job until its completion, was listed by Pittston as an employee.
 
 
 8
 There was evidence from which the jury could have found that Pittston rendered substandard performance in that it permitted Gregor to assume the duties of signalman, or that its regular signalman, Czop, walked away from his position at the crucial moment. Furthermore, the jury could have found that Pittston did not properly supervise the unloading and this led to confusion which contributed to the accident.
 
 
 9
 The issues of Lemke's competence and whether Weichsel, by turning over to Pittston an incompetent and inexperienced winchman, is barred from recovering over against Pittston, were submitted on proper instructions to the jury and were resolved against Pittston. The fact that under certain views of the case these findings would be inconsistent with the verdict in favor of McNamara against Weichsel is not controlling here, as there is some evidence to show that both Weichsel and Pittston were negligent, and thus the verdicts of the two trials are not necessarily inconsistent. See Atlantic and Gulf Stevedores, Inc. v. Ellerman Lines, Ltd., 369 U.S. 355, 364, 82 S.Ct. 780, 7 L.Ed.2d 798 (1962). It is well established that the negligence of Weichsel does not preclude recovery over against Pittston. Italia Societa per Azioni di Navigazione v. Oregon Stevedoring Co., 376 U.S. 315, 320, 84 S.Ct. 748, 11 L.Ed.2d 732 (1964); Weyerhaeuser Steamship Co. v. Nacirema Operating Co., 355 U.S. 563, 568, 78 S.Ct. 438, 2 L.Ed.2d 491 (1958).
 
 
 10
 Pittston assigns as error statements made before the jury by counsel for Weichsel to the effect that Lemke's competency, and thus Weichsel's negligence, had been conclusively determined in Weichsel's favor by the answer to an interrogatory given by the jury at the first trial. These remarks were immediately objected to and were ordered stricken from the record. Absent a motion for mistrial, the district court needed to do no more to protect Weichsel's interests.
 
 
 11
 Pittston assigns as error the dismissal of its claim against Montship. Montship was the time charterer of the Suderholm and it was its duty under the charter to arrange for the stevedoring services. The district court properly dismissed Pittston's claim against Montship, as the implied warranty of workmanlike service does not extend to a time charterer. Drago v. A/S Inger, 305 F.2d 139 (2 Cir. 1962), affirming 194 F.Supp. 398 (E.D.N.Y.1961).
 
 
 12
 Affirmed.
 
 
 
 [1]
 Judge Burke replied:
 'I decline to so charge, because if Gregor interfered and thereby gave orders to them and he improperly interfered, he interfered with Pittston's operations and anything they did for him they were doing for him as first mate for the ship in case of Gregor's interference. I leave the question of interference to the jury. What you have asked depends upon their findings as to that. I decline to so charge.'